UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON


CIVIL ACTION NO. 07-143-GWU


VICTOR NEALIS,                                                    PLAINTIFF,


VS.                          **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB).  The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?  If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to Step 4.  If no, the claimant is not disabled.  See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-143  Nealis

4.      Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled.  If no, proceed to Step 6.   See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work?  If yes, the claimant was not disabled.  If no, proceed to Step 7.  See 20 C.F.R. 404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy?  If yes, the claimant is not disabled.   See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply.  Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

07-143  Nealis

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

07-143  Nealis

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-143  Nealis

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

**DISCUSSION**

The plaintiff, Victor Nealis, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of low back pain and Hepatitis C (Tr. 14). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mr. Nealis retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits.  (Tr. 14-18).  The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age of 47, approximately 12 years of education, and work experience as a machine operator and retail merchandiser could perform any jobs if he were limited to "light" level exertion, was unable to climb ladders, ropes, and scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, and could frequently climb ramps and stairs.  (Tr. 293-4).  The VE testified that the plaintiff had

transferable skills from his retail merchandising job to work as any type of retail clerk, and in addition could perform the unskilled job of cashier, and proceeded to give the numbers in which they existed in the state and national economies. (Id.).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mr. Nealis alleged disability due to a back injury, which had occurred in April, 2003. (Tr. 63). Additionally, he cited carpal tunnel syndrome in both wrists and epicondylitis (Id.), but admitted that he had had surgery for both of these conditions several years before his alleged onset date and continued to work in his retail job (Tr. 264). At the hearing, he also described a diagnosis of Hepatitis C, for which he received injections, and which caused fatigue and pain in the rib cage area (Tr. 269, 288). He still had severe pain from his lower back injury, despite surgery, and could only lift 10 or 15 pounds without severe pain. (Tr. 287). He could not lift this weight repetitively, however. (Tr. 290). In addition to his lower back pain, he still had tingling and numbness in his arms from his elbow and wrist problems. (Tr. 286).

Medical records in the transcript reflect that Dr. Phillip Tibbs, a neurosurgeon, performed a right L5-S1 microdiscectomy on Mr. Nealis in September, 2003. (Tr. 117, 121-3). There were no complications from the surgery and Mr. Nealis was discharged on a regular diet and cautioned to do no lifting greater than five pounds.

07-143  Nealis

(Tr. 117).  At approximately the same time, sources at the Veterans Administration Medical Center (VAMC) noted a positive Hepatitis C screen and elevated liver function test.  (Tr. 218).[1]  Due to complaints of recurrent pain, Dr. Tibbs referred his patient to a pain clinic in November, 2003 and suggested that he might need lumbar epidural steroid blocks.  (Tr. 129).  Apparently, he did not give any permanent functional restrictions.

Notes from Dr. James Templin, a pain care specialist, indicate that he began treating Mr. Nealis in January, 2004.  (Tr. 146).  His physical examination showed some weakness on the right side, as well as decreased reflexes and sensation.  (Tr. 148).  Dr. Templin prescribed medications including methadone and referred Mr. Nealis for epidural injections.  (Tr. 149).   He opined that Mr. Nealis was unable to return to his previous work position "at this time."  (Id.).  Unfortunately, the injections failed to provide any long-term benefit, and the plaintiff also said the narcotic medication was ineffective in controlling his pain.  (Tr. 138, 140).  Once again, it appears that no permanent functional restrictions were given.

_____

[1] The plaintiff had been requesting increased pain medication, and shortly afterwards, reported that narcotics had been stolen from his car, but the VAMC refused to prescribe additional medication.  (Tr. 213-14, 218, 220-3).  Mr. Nealis testified that he had been arrested for driving under the influence of narcotics as well as being arrested for "doctor shopping," and his only current pain medication was Ibuprofen.  (Tr. 272-8). The Ibuprofen was only partially effective, however.  (Tr. 280).

Dr. Stephen Lamb conducted a consultative physical examination of the plaintiff on October 29, 2004.  Mr. Nealis stated that he had discontinued the use of Oxycodone due to hepatitis, that he had been arrested for driving under the influence and public intoxication, and "was divorced because of prescription drugs." (Tr. 159-60).  Mr. Nealis mentioned his history of carpal tunnel surgery in 1996 and surgery for bilateral epicondylitis in 1997.  (Tr. 159).  Dr. Lamb's physical examination showed that the plaintiff walked favoring his left leg, and forward flexion was limited to 60 degrees, but he had no difficulty getting on and off the examination table or performing heel and toe walking.  (Tr. 161-2).  There was some numbness on the right side suggesting nerve root compression, but deep tendon reflexes were symmetrical.  (Tr. 157, 161).  Dr. Lamb was unsure if the plaintiff was giving maximum effort on grip testing, but he had a normal ability to perform gross manipulation.  (Tr. 161-2).  Dr. Lamb concluded that Mr. Nealis had no need of an assistive device for ambulation, would have a "mild" impairment for stooping and a "moderate" impairment for bending.  (Tr. 162).

State agency physicians who reviewed the record to this point concluded that Mr. Nealis would be capable of "light" level exertion, with non-exertional restrictions consistent with the ALJ's hypothetical question.  (Tr. 164-70, 173-80).  One of the physicians, Dr. David Swan, questioned the reliability of some of the physical

07-143  Nealis

findings, noting that they appeared to be inconsistent to at least a certain degree. (Tr. 165, 170).

Office notes from the VAMC indicate that by May, 2004 an ultrasound of the plaintiff's liver was normal.   (Tr. 183).   There is no suggestion of functional limitations due to hepatitis.

The plaintiff argues on appeal that it was improper to discount his treating sources, but, viewed in context, the limitations given by Dr. Tibbs and Dr. Templin do not appear to have been permanent in nature.  In particular, the five pound lifting limitation given by Dr. Tibbs was immediately after the plaintiff's back surgery.  In addition, Dr. Templin's opinion that the plaintiff could not return to his past work was not necessarily inconsistent with the ALJ's finding, since Dr. Templin described the job as involving lifting items weighing between 50 and 75 pounds, with repetitive bending, stooping, kneeling, squatting, and crouching.  (Tr. 147).  The hypothetical question is consistent both with the only restrictions given by Dr. Lamb, and the opinions of the state agency reviewers.   Therefore, it is clearly supported by substantial evidence.

The plaintiff also charges that the ALJ failed to consider the effect of his impairments in combination, but a review of the ALJ's decision shows that the ALJ's evaluation was adequate in this regard.  (Tr. 14-15).  Gooch, 833 F.2d at 592.

07-143  Nealis

Finally, the plaintiff argues that the evidence shows he would not be able to maintain a job for a significant period of time, but cites no medical opinion supporting this assertion.  Therefore, the argument is without merit.

The decision will be affirmed.

This the 15th day of February, 2008.

**Signed By:**

_**G. Wix Unthank**_

**United States Senior Judge**